IN THE ALABAMA COURT OF CRIMINAL APPEALS


FREESHONE CORNELIUS McLEOD,
    APPELLANT,

VS.

STATE OF ALABAMA,
    APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA

CASE NO. CC-02-235 & 02-236
CRIMINAL APP. NO.: **CR-02-1610**


Clark M. Parker, Attorney at Law (PAR069)
Ala. State Bar # ASB-4728-A63C
Brantley & Parker, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT



EXHIBIT
B

IN THE ALABAMA COURT OF CRIMINAL APPEALS

FREESHONE CORNELIUS McLEOD,
     APPELLANT,

VS.

STATE OF ALABAMA,
     APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA

CASE NO. CC-02-235 & 02-236
CRIMINAL APP. NO.:  **CR-02-1610**

## STATEMENT REGARDING ORAL ARGUMENT

**Oral argument is not requested in this case.**

TABLE OF CONTENTS

TABLE OF CITATIONS                              ii

TABLE OF ADVERSE DECISIONS                      iv

STATEMENT OF ISSUES PRESENTED FOR REVIEW        v

STATEMENT OF THE CASE                           1

STATEMENT OF THE FACTS                          2

ARGUMENT                                        11

CONCLUSION                                      27

CERTIFICATE OF SERVICE                          31

**TABLE OF CITATIONS**

Alston v. State, 63 Ala. 178. . . . . . . . . . . . 19, 21

AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030 Ala.1986).15

Austin v. State, 434 So.2d 289 (Ala.Cr.App.1983) . . . . 19

Banks v. State, 845 So.2d 9, Ala.Crim.App.,2002. . . . . 12

Barnes v. State, 580 So.2d 77 (Ala.Crim.App.1991) . . . .27

Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App.). . . . . 23, 24

Ephraim v. State, 627 So.2d 1102 (Ala.Cr.App.1993). . . 17

Ex parte Acree, 63 Ala. 234 (1879). . . . . . . . . . . 24

Ex parte Heaton, 542 so.2d 931, at 932 Ala. 1989. . . . .12

Ex parte Walker, 623 So.2d 281, at 284. (Ala.1992) . . . 19

Free v. State, 455 So.2d 137 (Ala.Crim.App.1984). . . . .25

Green v. State, 258 Ala. 471, 64 So.2d 84 (1953). . . . . 20

Hayes v. State, 717 So.2d at 36.(Ala.Crim.App.1997). . . .18

Hurst v. State, 397 So.2d 203 (Ala.Cr.App.). . . . . . . .19

Inmin v. State, (Ala.Crim.App. 1995). . . . . . . . . . .23

Isom v. State, 497 So.2d 208, 212 (Ala.Crim.App.1986). . 12

Jackson v. State, 471 So.2d 516 (Ala.Crim.App.1985). . . 27

Lancaster v. State, 21 Ala.App. 140, 106 So. 609. . . . .21

Leitner v. State,631 So.2d 273, Ala.Cr.App.,1993, 278.. .18

Levison v. State, 54 Ala. 520. . . . . . . . . . . . .21

Lowrey v. State, 26 Ala.App. 159, 155 So. 313 (1934)...20

McCain v. State, 46 Ala.App. 627, 247 So.2d 383 (1971).19

McDonald v. State, 165 Ala. 85, 51 So. 629 (1910). . . 20

Mitchell v. State, 473 So.2d 591, 594 (Ala.Cr.App.1985)19

Morris v. State, 25 Ala.App. 175, 142 So. 685 (1932). 20,21

Peeples v. State, 601 So.2d 186, 187 (Ala.Cr.App.1992). .19

Rowe v. State, 421 So.2d 1352 (Ala.Crim.App.1982). . . .27

R.W. v. State, 808 So.2d 1228 (Ala.Crim.App.2001). . . 24

Scott v. State, 96 Ala. 20, 11 So. 193 (1892) . . . 20, 21

Toliver v. State, 142 Ala. 3, 38 So. 801 (1905). . . . .20

Waters v. State, 357 So.2d 368 (Ala.Cr.App.). . . . . . .19

**CONSTITUTIONS, STATUTES, RULES & Treatises**

Fourteenth Amend. to the United States Constitution 16, 28

Article I, section 7, of the Constitution of Alabama . .16

C. Gamble, McElroy's Alabama Evidence § 21.01(1) (4th ed. 1991). . . . . . . . . . . . . . . . . . . . . . .19

Code of Alabama, 1975, § 12-21-137 . . . . . . . . . .17

Code of Alabama, 1975, § 13A-6-61 . . . . . . . . . . 26

Rule 401 Ala. R. Evid. . . . . . . . . . . . . . . .17

RULE 402 Ala. R. Evid.. . . . . . . . . . . . . . . . .18

Rule 403 Ala. R. Evid. . . . . . . . . . . . . . . 15, 16

SegmentElement

## TABLE OF ADVERSE DECISIONS

Page

C68.      Motion for New Trial
C72.      Denied

R611.     Motion for Judgment of Acquittal on Rape Charge
R612.     Denied

R613.     Motion for Judgment of Acquittal on Attempted Murder
R614.     Denied

R378.     Objection by State to Defense Question Based on
          Relevance.
R378, 379, 383, 386, 390. Denied

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.   WHETHER THE TRIAL COURT ERRED IN DENYING THE
     APPELLANT'S MOTION FOR A NEW TRIAL.

     YES

II.  WHETHER THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S
     OBJECTION TO THE APPELLANT'S EXAMINATION OF VICTIM'S
     MOTHER REGARDING HER CUSTODY OF VICTIM?

     YES

III. WHETHER THE TRIAL COURT ERRED IN DETERMINING THERE WAS
     SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF
     ATTEMPTED MURDER AS CHARGED IN THE INDICTMENT?

     YES.

IV.  WHETHER THE TRIAL COURT ERRED IN DETERMINING THERE WAS
     SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF RAPE IN
     THE 1ST DEGREE AS CHARGED IN THE INDICTMENT?.

     YES.

v

## STATEMENT OF THE CASE

The Appellant, Freeshone Cornelius McLeod hereinafter referred to as Mr. McLeod, was arrested on October 7, 2001(C57), and was charged with one count of Rape in the 1st Degree, and one count of Attempted Murder (C57). Mr. McLeod was indicted on (January 31, 2002) under two separate indictments (C13, 15). Mr. McLeod was tried on April 7,2003(C255) and convicted of by a jury under each indictments.  Mr. McLeod was sentenced on May 28, 2003, 99 years consecutive, fined $20,000.00, assed $5,00.00 Victims Compensation Fund, on each case, respectively. (C66-67).

The defendant's attorney filed a written Notice of Appeal on June 6, 2003, (C76).  This appeal follows.

## STATEMENT OF THE FACTS

This matter was tried before the Hon. Judge Bradley Eutaw Mendheim, Acting Circuit Judge, on April 7 through April 9,2003. The Hon. Douglas Valeska, District Attorney for the 20th Judicial District represented the State. The

I

Hon. Thomas K. Brantley, Attorney at Law, Dothan, represented the Defendant, Mr. McLeod.

Prior to opening statements to the jury by counsel, Mr. Brantley moved to suppress Mr. McLeod statements made to Houston County Sheriff's Department Investigator Adam Robinson (R16). A hearing was conducted outside the presence of the jury (R16).

The State called Investigator Adam Robinson to the stand. The State questioned the witness of October 6, 2001 being in Gordon, Alabama, Houston County, 62 Gordon Street. Robinson stated, "We received a call of a child bleeding from the head." (R17). Investigator Robinson was further questioned by the State and it was established that he was present at the time when Jonteria Jones, the victim, was talking or was lying on the concrete where her mother was in close proximity to her. (R25). The State asked if Robinson if he had heard the victim's mother ask her who had done this and who had hurt her or caused her this injury. (R25). Mr. Brantley objected on relevance as to what others had said. The Court directed the State to "just go to the facts" and admitted it for purposes of the motion in limine.

2

Mr. McLeod was detained, but was not placed under arrest (R29). He was hand cuffed then placed in the back seat of Robinson's' patrol unit, at which time the Defendant asked if the child was ok. Robinson stated that the Defendant had no blood on him, nor did he appear to be under the influence of any intoxicants. The Defendant was taken to the Houston County Jail for questioning.

Upon Cross-Examination Mr. Brantley established the amount of time that Robinson was on the scene, and that during that time he did not see the victim point or hear her speak. Robinson was asked if McLeod was under arrest when he was placed in the backseat handcuffed. "No Sir, he was detained for questioning" (R40). Mr. Brantley asked if he was read his rights. "Yes Sir" (R40). Upon further questioning Robinson could not recall if he gave the Defendant a Waiver of rights, or if he asked him if he waived those rights. When asked if anyone else heard the statements made by the Defendant, "No sir. I don't believe so" (R42).

The State and the Defense rested on the Suppressed Issues. The Court found Robinson's statement admissible. The Court consolidated the cases without objection. "The

two charges are, rape in the first and attempted murder."
(R46).

The State called Tylena Wesley to the stand. Tylena was
a 4 year old, and at the time of the incident she was age
3. The Court questioned her ability to understand. The
State explained to Tylena to answer yes or no, she either
did not understand or remember. Mr. Brantley requested to
take the witness on Voire Dire. The court granted a Voire
Dire Exam. " I would move at this point and time to exclude
her as a witness for the lack of capacity because she is so
young." (R90). The court determined the witness competent
and allowed her testimony admitted. Tylena stated that
Jonteria, the victim, left the house to go get some noodles
and Freeshone followed her out. She further stated that
when Freeshone came back in the house, Jonteria did not.
Witness was then dismissed.

The State called Melissa Ann Lee to the stand. Ms. Lee
testified that around one o'clock to one thirty, on October
6, 2001 she saw the Defendant outside of her kitchen
window, looking around, she went to the door to see what he
was doing. "He said he was looking for Jonteria." (R132).
Her Brother, Larry Dixon, rode by, she went to talk to him

4

and did not see the Defendant again until she went down to
Mr. McGriff's. State passed the witness.

During Mr. Brantley's questioning the court learned of
a sexual relationship that Jonteria's mother, Tunt, was
having with Larry Dixon, the witness's brother, before and
during the time she was with the Defendant. Witness was
dismissed.

State called Mose McGriff. The State questioned Mr.
McGriff about October 6, 2001, around two o'clock, and
whether he recalled where he was. He stated that he was
cooking when he noticed the Defendant outside walking back
and forth on the road. He went out to talk to him and see
what he was doing. "He asked me have I seen the daughter."
(R263). "He said the little girl was lost." (R264). "I
asked how long she been gone. He said about thirty-five to
forty minutes." (R264). Mr. McGriff went with the Defendant
to look for Jonteria. Together Mr. McGriff and the
Defendant found Jonteria in the bushes face down. Mr.
McGriff stated, "I said do not touch the baby we are going
to call 911." (R271). The State asked, "Who got her out of
the bushes?" (R272). "I seen her momma toting her into my
driveway."(R272). State passed the witness.

Mr. Brantley cross examines MR. McGriff and established that he had seen the defendant and Jonteria together quite often, and that he was always taking care of her. That he would be the only adult with her, he would be the grown-up person to take care of her. "Where did you look when Freeshone came up to you and asked you would you help look for Tera, that Tera was lost?"(R281). Tera was a nickname for the victim. He then stated they started looking in the ditch in front of his house. They looked around the trailer, and they found drag marks that were going toward the bushes. They followed the marks and found Jonteria in the bushes. "She was laying on top of them." (R283).

The State called Dinthea Jones, "Tunt", the mother of the victim. The State asked her, "If I could, On October 6, 2001, tell the Jury who had legal custody of Jonteria?" (R352). My sister, Mary Wesley." (R352).  She stated in her testimony that she saw Jonteria that morning once. Later in the day she went to he mothers house, Jonteria was not there. She left her momma's and went to a friend's house. She further stated,  "Somebody came up the road and said, Joneteria was on the next street." (R354). "Who went looking with you?" (R354). "He did", referring the

Defendant.(R354). However, she stated she did not go with the Defendant to Mr. McGriff's. Yet, she stated that Freeshone told her he found the body and took her straight to it. She picked up her daughter and carried her to Mr. McGriff's driveway and laid her down.

Mr. Brantley cross-examined the witness. Mr. Brantley established that Mrs. Wesley has had custody of Jonteria for two years. When asked why she did not have custody of the child, the State objected on grounds of relevance. (R.378). The Court asked counsel to approach the bench. Proceedings were held at the bench outside of the hearing of the Jury.  The Court asked Mr. Brantley, how the question was relevant? He explained that the evidence needed to come in because in the past she had physically abused the child. After argument of the council the court sent the jury out to examine the witness on this issue.

The court learned that the witness, who is the mother of the victim, lost custody of the victim because DHR said she was not properly supervising the child. (R383). A judge determined the custody. (R382). The Court sustained the State's objection. (R383) With further argument Mr.

7

Brantley continued to try and show the court the relevancy of this line of questioning. (R383-391)

While the jury remained out of the courtroom, Mr. Brantley produced a document of a conviction for domestic abuse against the witness' brother and offered it for admission. The State objected; "First of all that is not a certified copy." (R394). The court allowed Mr. Brantley to offer the facts substantiating the conviction. The witness admitted that she had plead guilty in Gordon, Alabama, Municipal court, in February of 2001, to assault 3rd degree. (R395). The Court, again, determined that the issue was not relevant. (R396).

Ms. Jones stated that after she got up on the morning of the incident she had gone to her mother's house, which was not far from where she lived; "you could just walk." (R406). The witness then provided confusing and contradicting testimony as to where she was that morning. After saying that she had been at her mother's house she stated, "The same house I was at -- I mean, my momma -- I was over at Walt Lee's house. I was at Walt Lee's house. (R408). Ms. Jones stated that she first learned of her daughter missing when Mr. McLeod came and told her. She

8

stated they both left together looking for her. (R410). Mr.
McLeod and Ms. Jones both looked for the victim and Ms.
Jones stated that Mr. McLeod appeared to be concerned about
where she was. (R412). Ms. Jones stated that Mr. McLeod had
an "evil look on his face" when he pointed out the victim
to her. (R413). She stated that she was staring at his face
even before she picked her daughter up. (R416).

On re-direct examination by the State, Ms. Jones stated
that there were no other pots or pans in the trailer where
she and Mr. McLeod lived, except the wok that was alleged
to have been used to strike the victim. (R420). She stated
that her mother's house was within about 20 feet of Mr.
McGriff's house and that Mr. McGriff's house was not less
than 20 feet from the trailer where she lived with Mr.
McLeod. (R420-421).

The State next called Lieutenant Donald Valenza,
Houston County Sheriff's Department Investigator as its
witness. (R.427). Lt. Valenza testified that he received
the wok alleged to have been used in the incident from
another deputy and transported it to Montgomery for
fingerprint examination. (R432). He also told the court
that he took the "major case prints" of Mr. McLeod. (R432).

The State called Peter Macchia, forensic scientist, Alabama Department of Forensic Science. (R453). After extensive questioning, and upon motion by the State, Mr. Macchia no objection was made to his being declared an expert in the field of DNA. (R468).

Mr. Machia stated that he obtained evidence determined to be semen found on the clothing from the victim which matched the DNA of Mr. McLeod. (R489-490). Mr. Machia stated that he determined there was no semen on the swabs from the "rape kit" used to examine the victim. (R502). He stated that the semen from the clothing of the victim came from the hip area of the pants. (R508).

Investigating Officer, Houston County Sheriff's Department, Keith Cook, was examined by the State and generally described what he found at the scene. He stated that he saw blood in various places around the dwelling where the mother, Dinthea Jones, and Mr. McLeod lived. (R527-534). Inv. Cook obtained a wok type fry pan, that was suspected to be connected with the crime.

The State next called Shannon Fitzgerald, a certified latent print examiner for the Alabama Bureau of Investigation. (R 567). Mr. Fitzgerald testified that he

obtained latent fingerprints from the inside of the wok
which were determined to be from Mr. McLeod.

   After cross-examination and redirect were conducted
several times, the State rested. Mr. McLeod decided not to
testify.

**ARGUMENT**

I.    **WHETHER THE TRIAL COURT ERRED IN DENYING THE
      APPELLANT'S MOTION FOR A NEW TRIAL.**

      **YES**

   Mr. McLeod filed a motion for new trial on May 15th,
2003, (C68), stating, inter alia, that subsequent to the
trial the Defense counsel was made aware of evidence that
could not have been discovered by the exercise of due
diligence prior to trial and the newly discovered evidence
was material and arguably was evidence that had the jury
been made aware of this evidence a verdict of not guilty
would have been reached by the jury. The new evidence was
provided in the form of affidavit whererin an acquaintance
of the mother, Dinetha Jones, often dressed the victim, her
daughter in her own soiled and dirty cloths.

   The evidence would have provided a basis for the jury
to conclude that the semen found on the garment that the

victim was wearing did in fact come into contact with the
victim after the mother wore the garment after having sex
with Mr. McLeod, her live in boyfriend. After hearing, the
Trial Court denied the motion. (C72).

> The standard of review for cases involving the grant or
> denial of a new trial based on newly discovered
> evidence is the same as that for a motion to withdraw a
> guilty plea.
> Banks v. State, 845 So.2d 9, Ala.Crim.App.,2002.

The basis for a new trial is set out in Ex parte Heaton,
542 so.2d 931, at 932 Ala. 1989, as found in the case of Isom
v. State, 497 So.2d 208, 212 (Ala.Crim.App.1986) (citations
omitted). To establish a right to a new trial based on newly
discovered evidence, the petitioner must show the following:
(1) that the evidence will probably change the result if a
new trial is granted; (2) that the evidence has been
discovered since the trial; (3) that it could not have been
discovered before the trial by the exercise of due diligence;
(4) that it is material to the issue; and (5) that it is not
merely cumulative or impeaching.

Mr. McLeod submits that it is patent that the evidence
that that the panties were worn by and put on the victim by

12

the mother after having sex with the victim most probably

would change the outcome of the trial. Certainly, the

evidence was discovered after the trial. The evidence could

not have been discovered by the Defense because the

information was volunteered by an acquaintance of the

mother who the Defendant could not have known what she

knew. The evidence is most certainly material in that it

goes to the heart of the defense in that Mr. McLeod did not

attempt to rape the victim, and that the semen was on her

clothes after having been emitted during sex with the

mother. The issue of cumulativeness is moot because this

defense was incomplete with out this evidence.

Mr. McLeod contends that the Trial Court erred in not

granting a new trial on the his motion for the same after

having met the standard for the granting of a new trial.

### ARGUMENT

**II.  Whether the Trial Court erred in sustaining the State's
objection to the Appellant's examination of victim's
mother regarding her custody of victim.**

**Yes**.

Defendant had right to present reasonable alternative

theory to that of the state. Court prevented the Defendant

from developing that theory through cross-examination of
victim's mother.

Defense counsel began cross-examination of the State's
witness, Dinthea Jones, who is the victim's mother.(R376)
On cross-examination, the witness admitted that she was in
the area the day of the incident. On further cross-
examination, the Defense attempted to illicit evidence that
the victim was in legal custody of her aunt, the witness'
sister, at the time of the incident.(R377, 382). The State
objected on relevance. (R378). Custody of the victim was
taken from the mother by DHR because she was not adequately
supervising the child. (R383). Defense counsel argued that
he was trying to establish through this line of questioning
that someone else either did or could have committed the
offenses against the victim. (R378). Defense further argued
that she improperly supervised the victim on the day of the
incident, then it would be conceivable and logical that she
could have improperly supervised the child on the day of
the incident thus allowing some person other than the
Defendant to assault the child. (R386). After argument by
counsel, and a brief examination of the witness, both
outside the presence of the jury, (R382-391), the Trial

14

Court sustained the State's objection because of potential embarrassment to the witness and victim, (R381), and on the basis of relevance. (R386).

The Trial Court's reasoning for exclusion of this evidence was based upon his determination that the evidence sought for was irrelevant,(R 378, 379, 383, 386, 390), not that it's probative value substantially outweighed the danger of unfair prejudice, nor by confusion of the issues, nor was it  misleading to the jury, nor would it unduly delay the proceedings, nor would it be a waste of time, nor would it be a needless presentation of cumulative evidence. Therefore, "Rule **403**: Exclusion Of Relevant Evidence On Grounds Of Prejudice, Confusion, Or Waste Of Time," Ala.R.Evid., would not apply.

As with issues of relevancy, the exercise of this discretion will not be reversed on appeal, unless the discretion has been abused. The basic standard of review was set out in the case of AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030 (Ala.1986), holding that questions of... "materiality, relevancy, and remoteness rest largely with the trial judge and that rulings thereon will not be disturbed unless the judge's discretion has been abused,"

quoting from the "Advisory Committee's Notes" in Rule
403,Ala.R.Evid.

The entire line of questioning on this issue by the
Defense was an attempt to develop a theory of defense; a
reasonable alternative theory to that of the Defendant's
guilt. Defendant had right to present reasonable
alternative theory to that of the state. The Trial Court
erred when it prevented the Defendant from developing that
theory through cross-examination of victim's mother
regarding whether she improperly supervised her child.

Specifically, Ms. Jones said that the victim lived
close to her, that she stayed with her mother during the
day, who lived within sight of Ms. Jones' dwelling and that
she had seen the victim several times that day before the
incident, (R353). Ms Jones testified that Mr. McLeod told
her that he had seen the victim looking for her, (the
witness), and that prior to the incident..."Somebody came
up the road and said, Jonteria was on the next street."
(R354).


Fourteenth Amendment to the United States Constitution
and Article I, section 7, of the Constitution of Alabama,

16

provides a defendant with the right to be heard and to

present his own defense. Ephraim v. State, 627 So.2d 1102

(Ala.Cr.App.1993). Code of Alabama, 1975, § 12-21-137.

"Right of cross-examination," provides that;

> "The right of cross-examination, thorough and sifting,
> belongs to every party as to the witnesses called
> against him. If several parties to the same case have
> distinct interests, each may exercise this right.

Ala. R. Evid. Rule 401, states:

> "Relevant evidence" means evidence having any tendency
> to make the existence of any fact that is of
> consequence to the determination of the action more
> probable or less probable than it would be without the
> evidence.

The "Advisory Committee's Notes" to Rule 401, supra,

states:

> "The test of logical relevancy set forth in Rule 401 is
> a *liberal* one. Evidence is to be admitted if it
> possesses "any tendency," in logic or experience, to
> lead to the fact or inference for which it is offered.
> The standard of probability under the rule is "more
> probable or less probable than it would be without the
> evidence." (Emphasis Supplied by Counsel).

> Alabama recognizes a liberal test of relevancy, which
> states that evidence is admissible 'if it has *any*
> tendency to lead in logic to make the existence of the

17

fact for which it is offered more or less probable than
it would be without the evidence.' " <u>Hayes v. State</u>,
717 So.2d at 36.(Ala.Crim.App.1997)

The Defense was attempting to introduce a logical and
reasonable theory that someone other than the Defendant
could have committed the offense against the victim by
showing that the witness had "in loco parentis" custody of
her child, or at the least, implied responsibility to look
after the child, and negligently supervised the child. Most
poignantly, the witness testified that, "*Somebody* came up
the road and said, Jonteria was on the *next street*."

   **RULE 402.** <u>RELEVANT EVIDENCE GENERALLY ADMISSIBLE;</u>
<u>IRRELEVANT EVIDENCE INADMISSIBLE</u>, states:

> All relevant evidence is admissible, except as
> otherwise provided by the Constitution of the United
> States or that of the State of Alabama, by statute, by
> these rules, or by other rules applicable in the courts
> of this State. Evidence which is not relevant is not
> admissible.

   In the case of <u>Leitner v. State</u>,631 So.2d 273,
Ala.Cr.App.,1993, at 278, this Honorable Court held that
evidence that some one other than the Defendant may have
committed the crime for which the Defendant is being
charged is relevant evidence:

Evidence suggesting that someone other than the appellant may have killed Craven is relevant evidence...

The court ruled that the journal excerpt was not relevant to the case. Evidence, however, is relevant and admissible "if it has any probative value, however slight, upon a matter in the case." C. Gamble, *McElroy's Alabama Evidence* § 21.01(1) (4th ed. 1991); Peeples v. State, 601 So.2d 186, 187 (Ala.Cr.App.1992). "Evidence is relevant if it has 'any tendency to throw light upon the matter in issue, *even though such light may be weak and falls short of demonstration*.' McCain v. State, 46 Ala.App. 627, 247 So.2d 383 (1971); Austin v. State, 434 So.2d 289 (Ala.Cr.App.1983). 'Any fact which has causal connection or logical relation to another fact, so as to make the other fact either more or less probable, is competent or relevant.' Hurst v. State, 397 So.2d 203 (Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala.1981); Waters v. State, 357 So.2d 368 (Ala.Cr.App.), cert. denied, 357 So.2d 373 (Ala.1978)." Mitchell v. State, 473 So.2d 591, 594 (Ala.Cr.App.1985) (Emphasis Supplied in opinion).

Further case law support the proposition that a Defendant may attempt to explore and offer evidence that someone other than the Defendant may have committed the crime for which he is charged is upheld in the case of Ex parte Walker, 623 So.2d 281, at 284. (Ala.1992):

Generally, an accused may offer evidence that some other person committed the crime. See, e.g., C. Gamble, *McElroy's Alabama's Evidence,* § 48.01(1) (4th ed. 1991). To be admissible, evidence of this kind must meet several requirements, one of which is that the

evidence would have to be admissible if the third party
was on trial. Lowrey v. State, 26 Ala.App. 159, 155 So.
313 (1934); Green v. State, 258 Ala. 471, 64 So.2d 84
(1953); Morris v. State, 25 Ala.App. 175, 142 So. 685
(1932). Also, the proffered evidence must relate to the
"res gestae" of the crime--that is, it must be derived
from and related to the facts and circumstances of the
alleged crime. Toliver v. State, 142 Ala. 3, 38 So. 801
(1905); McDonald v. State, 165 Ala. 85, 51 So. 629
(1910). This kind of evidence is particularly important
where the State's case rests primarily upon
circumstantial evidence, as it does here. This court
has held that blame-shifting proof can take a wide
range in such a case, stating in Green, supra, that
"[i]n order to rebut the circumstantial evidence
against him, *the defendant had a right to introduce any
legal evidence tending to show that someone else may
have been guilty in exoneration of himself*." See also
Scott v. State, 96 Ala. 20, 11 So. 193 (1892).
(Emphasis Supplied by Counsel).

The case of Green v. State, 64 So.2d 84, Ala. 1953, is

based on facts similar to the circumstances and defense

theory in the case at bar relating to the witness's

relationship with the victim. The Defense was attempting to

establish the fact that the witness and mother of the

victim had previously had been adjudicated as being

negligent in her supervision of her child, the victim.

> Also, the inquiry directed to the younger McGough as to
> whether or not he and Mrs. Boshell had had trouble or
> had had a falling out was admissible as a circumstance
> to cast suspicion on him. This being a case of
> circumstantial evidence, testimony may permissibly take
> a wide range and any fact from which an inference may
> be drawn relating to the crime is competent evidence.

Morris v. State, 25 Ala.App. 175, 142 So. 685; Lancaster v. State, 21 Ala.App. 140, 106 So. 609. In order to rebut the circumstantial evidence against him, the defendant had a right to introduce any legal evidence tending to show that some one else may have been guilty in exoneration of himself. Spicer v. State, supra; McDonald v. State, supra; Levison v. State, 54 Ala. 520; Alston v. State, 63 Ala. 178; Scott v. State, 96 Ala. 20, 11 So. 193.

## ARGUMENT

## III. WHETHER THE TRIAL COURT ERRED IN DETERMINING THERE WAS SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF ATTEMPTED MURDER AS CHARGED IN THE INDICTMENT?

### YES.

Mr. McLeod submits that the state failed to present sufficient evidence to convict him of Attempted Murder. The standard for conviction at trial is proof beyond a reasonable doubt, and the State must produce evidence which the jury might reasonably conclude excludes every reasonable hypothesis of defendant's innocence.

The State's witness, Melissa Ann Lee, stated that she saw Mr. McLeod outside and he stated that he was looking for the victim. (R132). The State's next witness, Mr. Mose McGriff, testified that he saw Mr. McLeod walking back and forth on the road. He went out to talk to him and see what he was doing. "He asked me have I seen the daughter."

(R263). "He said the little girl was lost." (R264). "I
asked how long she been gone. He said about thirty-five to
forty minutes." (R264). On cross-examination, Mr. McGriff
stated that he often times saw Mr. McLeod taking care of
the victim. Mr. McGriff stated that he saw the victim
laying on top of some bushes in a thicket of plum trees
with limbs and sticks and that it was the kind of brush
that would scratch a person if they were dragged across the
brush. (R285). Mr. McGriff recounted how he and Mr. McLeod
looked all around the premises for the victim. Mr. McGriff
also admitted that Mr. McLeod exclaimed, "Oh my God" when
he first saw the victim, (R286), and that appeared to be
concerned about the victim during the time that they were
looking for her. (R288).

The State called Dinthea Jones, the mother of the
victim. Ms. Jones stated that after she got up on the
morning of the incident she had gone to her mother's house,
which was not far from where she lived; "you could just
walk." (R406). The witness then provided confusing and
contradicting testimony as to where she was that morning.
After saying that she had been at her mother's house she
stated, "The same house I was at -- I mean, my momma -- I

was over at Walt Lee's house. I was at Walt Lee's house.
(R408). Ms. Jones stated that she first learned of her
daughter missing when Mr. McLeod came and told her. She
stated they both left together looking for her. (R410). Mr.
McLeod and Ms. Jones both looked for the victim and Ms.
Jones stated that Mr. McLeod appeared to be concerned about
where she was. (R412).

Further, Ms. Jones stated that there were no other pots
or pans in the trailer where she and Mr. McLeod lived,
except the wok, which was alleged to have been used to
strike the victim. (R420).

The victim testified that she went to her aunt's house
to get some noodles to eat. (R 306, 311).

> The test to be applied is whether the jury might
> reasonably find that the evidence excluded every
> reasonable hypothesis except that of guilt; not whether
> such evidence excludes every reasonable hypothesis of
> guilt, but whether a jury might reasonably so
> conclude." Cumbo v. State, 368 So.2d 871, 874
> (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala.1979).
> (from)668 So.2d 152, Inmin v. State, (Ala.Crim.App.
> 1995)

> " 'The humane provisions of the law are, that a
> prisoner, charged with a felony, should not be
> convicted on circumstantial evidence, unless it shows
> by a full measure of proof that the defendant is
> guilty.  Such proof is always insufficient, unless it
> excludes, to a moral certainty, every other reasonable

hypothesis, but that of the guilt of the accused.  No
matter how strong the circumstances, if they can be
reconciled with the theory that some other person may
have done the act, then the defendant is not shown to
be guilty, by that full measure of proof that the law
requires.'  Ex parte Acree, 63 Ala. 234 (1879)."
Cumbo, 368 So.2d at 875." **R.W.** v. State, 808 So.2d 1228
(Ala.Crim.App.2001)

Considering the fact that Mr. McLeod alerted the family
and neighbors that the child was missing, that he searched
diligently for her as well as the testimony of the Mr.
McGriff and the victims mother concerning Mr. McLeod's
concern for the missing child and the concern that was
shown when she was found, the Trial Court and the jury
erred in not finding that a reasonable hypothesis other
than guilt existed.

The only frying pan, pot or cooking utensil in the
house was the wok. Mr. McLeod was preparing to cook for the
child, and the jury could reasonably have concluded that he
had cooked and handled the wok on prior occasions. The fact
that his finger and handprints were on the wok was not
surprising to the even the finger print expert, Mr. Machia.
The reasonable alternative theory that Mr. McLeod had used
the wok before and touched it with his hands is patent.

Further, the fact that the child was seen on another street as stated by her mother, ("Somebody came up the road and said, Joneteria was on the next street." (R354)), most certainly could provide an alternative theory that some other person had committed this crime.

Finally, the State failed to provide proof that the blow with the wok was intended to kill the victim. Dr. Salna, an attending physician, agreed that even a person who is unconscious from a minor injury would display the same symptoms as the victim when first presented at the hospital.

> Attempted Murder is a specific intent crime. An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder. One must intentionally or knowingly attempt to commit murder. A general felonious intent is not sufficient. Accordingly, one cannot recklessly attempt to commit murder. Free v. State, 455 So.2d 137 (Ala.Crim.App.1984).

The State failed to provide evidence that Mr. McLeod specifically intended to kill the victim.

**ARGUMENT**

IV. **WHETHER THE TRIAL COURT ERRED IN DETERMINING THERE WAS**
    **SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF RAPE 1ST**
    **DEGREE AS CHARGED IN THE INDICTMENT?**

**YES**

Mr. McLeod argues that there was not sufficient

evidence to convict him of Rape in the First Degree. Code

of Alabama § 13A-6-61. "Rape in the first degree" states:

> (a) A person commits the crime of rape in the first
> degree if:
>
> (1) He or she engages in sexual intercourse with a
> member of the opposite sex by forcible compulsion; or
>
> (2) He or she engages in sexual intercourse with a
> member of the opposite sex who is incapable of consent
> by reason of being physically helpless or mentally
> incapacitated; or
>
> (3) He or she, being 16 years or older, engages in
> sexual intercourse with a member of the opposite sex
> who is less than 12 years old.

The issue of penetration is for the jury to determine.

The State must prove that there is no reasonable

alternative theory that Mr. McLeod used his penis to have

sexual intercourse with the victim in this case. The

defense provided a reasonable alternative theory that the

child's vaginal area and parts were bruised and injured

during the time she was drug into the woods and over the brush and sticks.

Case law on this point is clear. "Penetration by the male sexual organ into the sexual organ of a female must be shown in order to sustain a conviction of rape." Jackson v. State, 471 So.2d 516 (Ala.Crim.App.1985)

> A required element of the crime of rape is proof of an actual penetration of the female sex organ by the male sex organ. Whether an actual penetration is accomplished is a question of fact to be determined by the jury. Rowe v. State, 421 So.2d 1352 (Ala.Crim.App.1982).
>
> In order to prove a prima facie case of rape in the first degree, the state must prove that the defendant, a male, did (1) engage in sexual intercourse with a female who was (2) less than 12 years of age. Barnes v. State, 580 So.2d 77 (Ala.Crim.App.1991), certiorari denied.

Mr. McLeod denies that the State has produced sufficient evidence to overcome his presumption of innocence.

## CONCLUSION

Mr. McLeod submits to this Honorable Court that the Trial Court erred in four areas that either substantially prejudiced Mr. McLeod in this trial or that were contrary to law.

Primarily, the Trial Court did not allow Mr. McLeod to

develop his defense regarding a reasonable alternate theory that another person could have committed this crime. The ability of a criminal Defendant to thoroughly cross-examine his accusers and the witnesses against him is fundamental in our adversarial system of justice. The Fourteenth Amendment to the United States Constitution provides that ..."No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Mr. McLeod asserts that his fundamental right to due process was abridged by the Trial Court's denying him the effective cross-examination of the victim's mother.

Secondly, Mr. McLeod asserts that there was insufficient evidence to support his conviction for attempted murder. The State failed to prove that Mr. McLeod specifically intended to kill the victim. The only evidence remotely connecting the Mr. McLeod to the alleged weapon, a wok, was that his hand and fingerprints were on it. That utensil was used by Mr. McLeod for cooking because it was

the *only* pot or pan in the house. It is absolutely reasonable that his prints should be on that wok.

Further, the State failed to prove that Mr. McLeod actually had sexual intercourse with the victim. There was a plethora of evidence that would suggest, and could lead a jury to conclude, that the victim's vaginal injuries were cause by being roughly dragged through a thicket of limbs, bushes, branches and brush.

Finally, the Trial Court erred in denying Mr. McLeod's motion for a new trial, which was primarily based upon newly discovered evidence which would have,(1), shown that the evidence would probably change the result if a new trial was granted; (2) that the evidence was discovered after the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it was material to the issue; and (5) that it was not merely cumulative or impeaching.

The Trial Court was provided, by affidavit, a statement from a witness, who came forward after the trial, which would have been able to directly develop the defense theory that Mr. McLeod was attempting to do through the cross-examination of Ms. Jones, the victim's mother.

29

The errors in this trial were not inconsequential, harmless or irrelevant. The errors were such that Mr. McLeod should be given a new trial in order to present evidence with which to develop a rational, reasonable alternative theory to that of his guilt.

Wherefore, Mr. McLeod prays this Honorable Court will grant him relief by reversing and remanding this matter to the Trial Court with instructions to enter a judgment of acquittal, or in the alternative, grant to him a new trial.

Respectfully submitted this the 15th day of January 2004.

Clark M. Parker

Clark M. Parker, Attorney at Law (PAR069)
Ala. State Bar # ASB-4728-A63C
Brantley & Parker, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009 Telephone
(334) 793-2037 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Brief of Appellant upon the Honorable Bill Pryor, Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36310, by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, on this the 15th day of January, 2004.


*Clark M Parker*
_____
Clark M. Parker, Attorney at Law (PAR069)
Ala. State Bar # ASB-4728-A63C
Brantley & Parker, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009 Telephone
(334) 793-2037 Facsimile