IN THE SUPREME COURT OF ALABAMA

EX PARTE: FREESHONE CORNELIUS McLEOD

FREESHONE CORNELIUS McLEOD,
APPELLANT

V.

STATE OF ALABAMA,
APPELLEE

PETITION FOR WRIT OF CERTIORARI TO
THE SUPREME COURT OF ALABAMA

AN APPEAL FROM THE CIRCUIT COURT

HOUSTON COUNTY, ALABAMA

CIRCUIT COURT CASE NO. CC-02-235 & 02-236

CRIMINAL APPEALS COURT NO. CR-02-1610

CLARK M. PARKER
ATTORNEY FOR APPELLANT
BRANTLEY & PARKER, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, AL  36303
(334) 793-9009


EXHIBIT
G

FREESHONE CORNELIUS McLEOD,           *

    PETITIONER,                            *

V.                                            *

STATE OF ALABAMA,                      *

    RESPONDENT.                            *

**TO THE SUPREME COURT OF ALABAMA:**

COMES NOW your petitioner, FREESHONE CORNELIUS McLEOD, and petitions this Honorable Court for a Writ of Certiorari to issue to the Court of Criminal Appeals in the above styled cause, pursuant to Rule 39, <u>Alabama Rules of Criminal Procedure</u>, and as grounds for said petition shows as the following:

1.    This matter was tried before the Hon. Judge Bradley Eutaw Mendheim, Acting Circuit Judge, on April 7 through April 9,2003. The Appellant, FREESHONE CORNELIUS McLEOD, was convicted of one count of Rape in the 1st Degree, and one count of Attempted Murder on April 9,2003.

Mr. McLeod was sentenced on May 28, 2003, 99 years on each case, to be served consecutively, and fined $20,000.00, assessed $5,000.00 Victims Compensation Fund, on each case.

On May 28th, 2003 Mr. McLeod gave oral notice of appeal and on January 16, 2004, filed his "Brief and Argument for Appellant" with the Alabama Court of Criminal Appeals. The Court of Criminal Appeals affirmed, by memorandum opinion, the conviction and sentence on March 19th, 2004. The Court of Criminal Appeals denied Mr. McLeod's "Application for Rehearing" on April 16th, 2004. This Petition for Writ of Certiorari follows said denial of Application for Rehearing.

2. That petitioner has attached a copy of the opinion of the Court of Criminal Appeals which was provided to him as Exhibit "A".

3. That the Petitioner has attached the order of the Court of Criminal Appeals denying his application for rehearing as Exhibit "B" to this petition;

4. The basis of this petition for the writ is that the decision of the appellate court is in conflict with its

prior decision on the same point of law. In its opinion in the case at bar the Court of Criminal Appeals held:

> "'The standard of review for cases involving the grant or denial of a new trial based on newly discovered evidence is the same as that for a motion to withdraw a guilty plea.
>
> "'"'The appellate courts look with disfavor on motions for new trials based on newly discovered evidence and the decision of the trial court will not be disturbed absent abuse of discretion.' Further, 'this court will indulge every presumption in favor of the correctness' of the trial judge's decision. The trial court is in the best position to determine the credibility of the new evidence."
>
> "'Isom v. State, 497 So.2d 208, 212 (Ala. Crim. App. 1986) (citations omitted). To establish a right to a new trial based on newly discovered evidence, the petitioner must show the following: (1) that the evidence will probably change the result if a new trial is granted; (2) that the evidence has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.'
>
> "542 So. 2d 931, 933 (Ala. 1989) (some internal citations omitted; emphasis added. ) See also Doty v. State 647 So.2d 41, (Ala. Crim. App. 1994); Hudson v. State, 623 So.2d 387 (Ala. Crim. App. 1993)."

Banks v. State, 845 So.2d 9, 20 (Ala. Crim. App. 2002).

"At the hearing, [on the Motion for New Trial], the
affiant testified that, one or two years prior to the
crime, she lived with J.J. and J.J.'s mother and that
J.J.'s mother would sometimes dress J.J. in the
mother's dirty clothing, including underwear. She could
not testify as to what J.J.'s mother did with her
clothing at the time of the crime, The fact that, some
time prior to the rape and attempted murder in the case
at hand, the victim's mother sometimes dressed the
victim in her own adult-sized, soiled underwear is in
no way relevant to the case at hand. Tha is to say, at
the time of the crime, J.J. was not living with or
cared for by her mother. Therefore, the newly
discovered evidence in this case was not material to
any of the issues involved in this trial." (p. 4-5)

The basis of the opinion in this case is in conflict
with the holding in Isom, et al, supra, in that the trial
court abused its discretion in holding that the newly
discovered evidence would probably have not changed the
outcome of the trial.

WHEREFORE, Petitioner respectfully requests that after
a preliminary examination, the writ of certiorari be
granted and that this Court proceed under its' rules to
review the matters complained of, and to reverse the
judgment of the Court of Criminal Appeals, and for such
other relief as Petitioner may be entitled.

Respectfully submitted this the 30th day of April, 2004.


CLARK M. PARKER (PAR069)
ATTORNEY FOR APPELLANT
BRANTLEY & PARKER, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, ALABAMA 36303
(334) 793-9009

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P.  Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

P. O. Box 301555

Montgomery, AL 36130-1555



RELEASED

MAR 1 9 2004

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY"McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

**MEMORANDUM**

CR-02-1610       Houston Circuit Court CC-02-235 and CC-02-236

<u>Freeshone Cornelius McLeod v. State of Alabama</u>

Cobb, Judge.

On April 9, 2003, McLeod was convicted of first-degree rape and attempted murder, violations of §§ 13A-6-61(a)(3), 13A-6-2(a)(1), and 13A-4-2, Ala. Code 1975.  On May 28, 2003, the trial court sentenced McLeod to two consecutive sentences of 99 years.  On May 15, 2003, McLeod filed a motion for a new trial, which the trial court summarily denied on May 28, 2003, after a hearing.

The evidence adduced at trial showed the following:  On October 6, 2001, six-year-old J.J. was living with her aunt, who was her legal guardian, and four other children, including her cousin named T.W., in a house.  J.J.'s mother lived in a

1

*Exhibit A*

nearby mobile home with 24-year-old McLeod, a.k.a. "Freek Nasty." T.W. testified that, on the day in question, J.J. left the aunt's house during the daytime and that McLeod followed J.J. T.W. testified that McLeod and J.J. were "[g]oing to get some noodles." (R. 105.) When McLeod returned later that day, J.J. was not with him.

J.J. testified that, on the day in question, McLeod took her to her mother's mobile home to go look for noodles. J.J. testified that, while they were at her mother's mobile home, McLeod "hurt" her. (R. 307.) She testified that McLeod hit her in the head with "a frying pan" in her mother's bedroom and that she saw blood. (R. 308.) J.J. identified McLeod in court as the person who hit her in the head with a frying pan.

Two people witnessed McLeod on the day in question, at approximately 1:00 p.m., apparently looking for J.J. They joined him in the search for the child. J.J., partially clothed, bloody, and breathing heavily, was found face-down on top of some bushes where she had been dragged from her mother's mobile home into the woods. McLeod discovered her body while searching with the help of a neighbor. J.J.'s mother appeared, and she and McLeod started fighting.

Shortly thereafter, law enforcement arrived on the scene. J.J. was taken to the emergency room, and McLeod was taken to jail. On the way to the county jail, McLeod asked the investigator whether J.J. was going to be all right. When the investigator answered that she probably had a fractured skull, McLeod asked, "[D]oes that [a]ffect her memory[?]"

At the emergency room, J.J. was "near death." (R. 175.) Upon arrival, J.J. was intubated. She was suffering from "swelling and blood" in the back of her skull, a subdural hematoma, or blood clot, and two skull fractures. Her face was bruised and swollen; her mouth was bruised and bleeding, and one of her teeth was chipped. The emergency room doctor testified that, "[i]n [his] opinion[,] someone was trying to beat [J.J.] to death." (R. 190.) J.J.'s back and right shoulder were bruised and scraped, consistent with being dragged across a "hard area, dirt, rocks, or sticks...." (R. 191.) A rape kit examination was performed on J.J. while she was in a coma. The emergency room doctor also found "bruising in and around her vaginal area," that her hymen had been

2

bruised, and blood in her vagina.    (R. 191.)  The emergency room doctor testified that he did not believe that the injuries to J.J.'s vagina were caused by a bicycle accident, but rather the injuries were consistent with having been penetrated by a penis.

Further examination by her pediatrician several days later revealed that J.J. had injuries to her vagina and that those injuries were consistent with having been penetrated by a penis.  The pediatrician testified that he believed that the vaginal injuries were caused by a penis, not by "a stick, a thorn on a blackberry bush or plum tree."  (R. 334.)

At the scene, a wok, with an indentation in the bottom, was found in a bedroom in J.J.'s mother's mobile home.  Blood spots were found throughout the mobile home, leading from the kitchen to J.J.'s mother's bedroom, and on McLeod's clothing that he was wearing at the time law enforcement arrived on the scene.  Fingerprints on the wok matched McLeod's.  J.J.'s DNA was found on McLeod's shirt.  Semen in the victim's panties matched McLeod's DNA profile.

McLeod advances four arguments on appeal.  We address each in turn.

                              I.

First, McLeod argues that the trial court erred by denying his motion for a new trial.  Specifically, he contends that newly discovered evidence, in the form of an affidavit by one of J.J.'s mother's acquaintances, stating that J.J.'s mother often dressed J.J. in her own adult-sized, soiled underwear, required a new trial because the affidavit "would have provided a basis for the jury to conclude that the semen found on the garment that the victim was wearing did in fact come into contact with the victim after the mother wore the garment after having sex with ... McLeod."  (Appellant's brief, pp. 11-12.)

             "'The standard of review for cases
        involving the grant or denial of a new
        trial based on newly discovered evidence is
        the same as that for a motion to withdraw
        a guilty plea.

                              3

"'"'The appellate courts look
with disfavor on motions for new
trials based on newly discovered
evidence and the decision of the
trial court will not be disturbed
absent abuse of discretion.'
Further, 'this court will indulge
every presumption in favor of the
correctness' of the trial judge's
decision. The trial court is in
the best position to determine
the credibility of the new
evidence."

"'Isom v. State, 497 So. 2d 208, 212 (Ala.
Crim. App. 1986) (citations omitted). To
establish a right to a new trial based on
newly discovered evidence, the petitioner
must show the following: (1) that the
evidence will probably change the result if
a new trial is granted; (2) that the
evidence has been discovered since the
trial; (3) that it could not have been
discovered before the trial by the exercise
of due diligence; (4) that it is material
to the issue; and (5) that it is not merely
cumulative or impeaching.'

"542 So. 2d 931, 933 (Ala. 1989) (some internal
citations omitted; emphasis added.) See also Doty
v. State, 647 So. 2d 41 (Ala. Crim. App. 1994);
Hudson v. State, 623 So. 2d 387 (Ala. Crim. App.
1993)."

Banks v. State, 845 So. 2d 9, 20 (Ala. Crim. App. 2002).

At the hearing, the affiant testified that, one to two
years prior to the crime, she lived with J.J. and J.J.'s
mother and that J.J.'s mother would sometimes dress J.J. in
the mother's dirty clothing, including underwear. She could
not testify as to what J.J.'s mother did with her clothing at
the time of the crime. The fact that, some time prior to the
rape and attempted murder in the case at hand, the victim's
mother sometimes dressed the victim in her own adult-sized,

4

soiled underwear is in no way relevant to the case at hand. That is to say, at the time of the crime, J.J. was not living with or cared for by her mother. Therefore, the newly discovered evidence in this case was not material to any of the issues involved in this trial.

Additionally, as the trial court noted, in the face of the overwhelming evidence of guilt against McLeod, the newly discovered evidence that, in the past, J.J.'s mother sometimes dressed her in the mother's own soiled underwear would probably not have changed the result of the trial had it been known at the time.

Therefore, the newly discovered evidence presented in McLeod's motion for a new trial did not warrant a new trial, and this argument is without merit.

II.

Second, McLeod argues that the trial court erred by sustaining the State's objection to defense counsel's questioning of the victim's mother regarding her lack of custody of the victim. Specifically, he argues that, at trial, he was

"attempting to introduce a logical and reasonable theory that someone other than the Defendant could have committed the offense against the victim by showing that the witness had 'in loco parentis' custody of her child, or at least, implied responsibility to look after the child, and negligently supervised the child."

(Appellant's brief, p. 18.)

At trial, defense counsel attempted to question the victim's mother as to the circumstances surrounding J.J.'s custody. Defense counsel asked her why custody had been awarded to her sister. The State objected, argument ensued, followed by a bench conference. Defense counsel argued that, although he did not know why custody had been awarded to the mother's sister, the trial court should allow him to question the mother in case custody was awarded to the sister because J.J.'s mother tried to kill her. The jury was sent out, and

5

J.J.'s mother was questioned.  J.J.'s mother testified that
J.J. was removed from her home following an accident that
occurred on a slide where J.J. broke her hip.  J.J.'s mother
stated that she had not been properly supervising her child at
the time of the accident.

Further argument ensued.  Defense counsel then maintained
that the mother's testimony regarding the loss of custody of
J.J. was relevant and "fit[] with [the] theory of a defense.
[T]hat is, ... [the mother] improperly supervised the child
that afternoon, and that explains why in the world that child
was lost, not because [McLeod] had hidden the child."  (R.
386-87.)  The trial court stated,

"I think -- what I was looking for her answer to
be relevant I think would have to be something along
the lines of supervision was taken away because the
mother had attempted to kill or seriously harm the
child before, which is one of the charges, or, for
instance, the mother had been a party to a sexual
abuse or rape of the child before, which we've had
those sort of cases where a mother is involved in
that situation.  Here we are allegedly claiming he's
doing the same thing that she allegedly did before.
But, again, based on her testimony -- and I don't
have those records or anything else -- what she has
testified I don't think is going to make it
relevant.  So at this point I will sustain the
State's objection as to the reason why she did not
have custody, or to phrase it another way, why the
sister had guardianship of the child according to
the witness'[s] testimony at this point."

(R. 385-86.)  The trial court also pointed out that, because
the sister had legal custody of J.J., the mother did not have
a legal duty to supervise the child at the time of the crime;
rather, that duty fell to the sister.

Later, during another related discussion, still outside
the presence of the jury, the trial court asked whether the
defense theory was that the mother committed the two crimes
against J.J.  Defense counsel answered, "We don't know.  We
just absolutely don't know.  But there's strong inferences out
there that she -- that the jury needs to know about."  (R.

6

398.)

    "Generally, an accused may offer evidence that
some other person committed the crime.  See, e.g.,
C. Gamble, McElroy's Alabama's Evidence, § 48.01(1)
(4th ed. 1991).  To be admissible, evidence of this
kind must meet several requirements, one of which is
that the evidence would have to be admissible if the
third party was on trial.  Lowrey v. State, 26
Ala.App. 159, 155 So. 313 (1934); Green v. State,
258 Ala. 471, 64 So.2d 84 (1953); Morris v. State,
25 Ala.App. 175, 142 So. 685 (1932).  Also, the
proffered evidence must relate to the 'res gestae'
of the crime--that is, it must be derived from and
related to the facts and circumstances of the
alleged crime.  Toliver v. State, 142 Ala. 3, 38 So.
801 (1905); McDonald v. State, 165 Ala. 85, 51 So.
629 (1910).  This kind of evidence is particularly
important where the State's case rests primarily
upon circumstantial evidence...."

Ex parte Walker, 623 So. 2d 281, 284 (Ala. 1992).

    This Court has stated:

"In addition, Alabama courts have also recognized
the danger in confusing the jury with mere
speculation concerning the guilt of a third party:

            "'"It generally is agreed that
            the defense, in disproving the
            accused's own guilt, may prove
            that another person committed the
            crime for which the accused is
            being prosecuted.... The problem
            which arises in the application
            of this general rule, however, is
            the degree of strength that must
            be possessed by the exculpatory
            evidence to render it admissible.
            The task of determining the
            weight that must be possessed by
            such evidence of another's guilt
            is a difficult one."

7

"'Charles W. Gamble, McElroy's Alabama
Evidence § 48.01 (5th ed. 1996). To remove
this difficulty, this Court has set out a
test intended to ensure that any evidence
offered for this purpose is admissible only
when it is probative and not merely
speculative. Three elements must exist
before this evidence can be ruled
admissible: (1) the evidence "must relate
to the 'res gestae' of the crime"; (2) the
evidence must exclude the accused as a
perpetrator of the offense; and (3) the
evidence "would have to be admissible if
the third party was on trial." See Ex
parte Walker, 623 So. 2d at 284, and
Thomas[v. State, 539 So. 2d 375, 394-96
(Ala. Crim. App. 1988)]."

"[T]he admissibility of such evidence must rest within the
sound discretion of the trial judge. Baker v. State, 555 So.
2d 273 (Ala.Cr.App. 1989)." Id.

McLeod contends that evidence that J.J.'s mother no
longer had custody of her because of an accident some years
ago was relevant because it tended to prove that someone other
than McLeod injured J.J. The proffered evidence, however,
does not do so. The proffered evidence does not exclude
McLeod as the perpetrator; at best, it merely implicates
J.J.'s mother as a facilitator to the crime. Additionally,
the proffered evidence is not derived from and related to the
facts and circumstances of the rape and the attempted murder;
it does not connect J.J.'s mother to her rape or her attempted
murder or the circumstances surrounding the crimes.
Therefore, the findings of the trial court are correct, and
this argument is without merit.

III.

Third, McLeod argues that there was insufficient evidence
to convict him of attempted murder. Specifically, he
contends, that the jury should have found in his favor
because, "considering the fact that McLeod alerted the family
and neighbors that the child was missing, that he searched
diligently for her as well as the testimony of [one of the

8

witnesses] and the victim's mother concerning McLeod's concern
for the missing child and the concern that was shown when she
was found, ... a reasonable hypothesis other than guilt
existed." (Appellant's brief, p. 24.) He also puts forth
another "reasonable alternative theory" for his fingerprints
being on the wok, and he argues that the fact that the victim
was "seen on another street[,] ... most certainly could
provide an alternative theory that some other person had
committed this crime." (Appellant's brief, p. 25.) Finally,
he argues that the State did not provide evidence that McLeod
intended to kill J.J.

McLeod argued at trial at the close of the State's case-
in-chief that the State had failed to prove that "this was
more than an assault." (R. 613.) The defense did not put on
any witnesses. McLeod argued in his motion for a new trial
that the evidence was insufficient and that the verdict was
against the great weight of the evidence.

Initially, we note that, with the exception of his
argument regarding the alleged lack of proof of intent, all of
McLeod's arguments concern the weighing of evidence, not the
presentation of a prima facie case of attempted murder.
Therefore, the following law applies:

> "'We have repeatedly held that it is not
> the province of this court to reweigh the
> evidence presented at trial. <u>E.g.,</u>
> <u>Franklin v. State</u>, 405 So. 2d 963, 964
> (Ala. Cr. App.), cert. denied, 405 So. 2d
> 966 (Ala. 1981); <u>Crumpton v. State</u>, 402 So.
> 2d 1081, 1085 (Ala. Cr. App.), cert.
> denied, 402 So. 2d 1088 (Ala. 1981); <u>Nobis
> v. State</u>, 401 So. 2d 191, 198 (Ala. Cr.
> App.), cert. denied, 401 So. 2d 204 (Ala.
> 1981). "'[T]he credibility of witnesses
> and the weight or probative force of
> testimony is for the jury to judge and
> determine.'" <u>Harris v. State</u>, 513 So. 2d
> 79, 81 (Ala. Cr. App. 1987) (quoting <u>Byrd
> v. State</u>, 24 Ala. App. 451, 136 So. 431
> (1931)).'

"...<u>See</u> <u>Smith v. State</u>, 604 So. 2d 434 (Ala. Cr.

App. 1992); <u>Pearson v. State</u>, 601 So. 2d 1119 (Ala. Cr. App. 1992); <u>Curry v. State</u>, 601 So. 2d 157 (Ala. Cr. App. 1992)."

<u>Zumbado v. State</u>, 615 So. 2d 1223, 1240-41 (Ala. Crim. App. 1993) (quoting <u>Johnson v. State</u>, 555 So. 2d 818, 819-20 (Ala. Crim. App. 1989)).   We will not second-guess the jury's determinations regarding the weight of the evidence. Therefore, these arguments are without merit.

As for McLeod's argument that the State failed to prove that he intended to murder J.J., we note:

> "'"'Thus, as a general rule, the force or violence which was employed must be proven to have been intentional.... The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another.'"'

"<u>Long v. State</u>, 668 So. 2d 56, 60 (Ala.Cr.App. 1995)."

<u>Hutcherson v. State</u>, 727 So. 2d 846, 853 (Ala. Crim. App. 1997).

Based upon the circumstances surrounding the attack of the victim, McLeod's use of the wok as a deadly weapon, and the quality and quantity of victim's injuries, as set forth above, we conclude that the evidence presented by the State

was sufficient to prove that McLeod had the specific intent to
kill J.J.  Therefore, McLeod's argument is without merit.

IV.

Finally, McLeod argues that the evidence was insufficient
to sustain the jury's guilty verdict against him on the rape
charge.  Specifically, he argues that the jury erred in not
finding credibility in his "reasonable alternative theory that
the child's vaginal area and parts were bruised and injured
during the time she was [dragged] into the woods and over the
brush and sticks." (Appellant's brief, pp. 26-27.)  Again, as
stated above in part III, although McLeod's argument is
couched in terms of sufficiency, he is actually contesting the
jury's weighing of the evidence.  For the same reasons stated
in Part III, this weight-of-the-evidence argument is also
without merit.  See Zumbado, supra.

For the reasons stated above, the judgment of the trial
court is affirmed.

AFFIRMED.

McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.

11

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA

Lane W. Mann
  Clerk
Wanda K. Ivey
  Assistant Clerk



P. O. Box 301555
Montgomery, AL 36130-1555
(334) 242-4590
Fax (334) 242-4689

April 16, 2004

### CR-02-1610

Freeshone Cornelius McLeod v. State of Alabama  (Appeal from Houston  Circuit Court:
CC02-235; CC02-236).

## <u>NOTICE</u>

You are hereby notified that on April 16, 2004 the following action was taken in the
above referenced cause by the Court of Criminal Appeals:

Application for Rehearing Overruled.

**Lane W. Mann, Clerk**
**Court of Criminal Appeals**

cc: Hon. Judy Byrd, Circuit Clerk
    Clark Maurice Parker, Attorney
    Beth Slate Poe, Asst. Atty. Gen.

*Exhibit B*

FREESHONE CORNELIUS McLEOD,          *

    PETITIONER,          *

V.          *

STATE OF ALABAMA,          *

    RESPONDENT.          *

**TO THE SUPREME COURT OF ALABAMA:**

    COMES NOW the undersigned counsel and moves this Honorable Court for an extension of time in which to file the Brief in Support of the forgoing Petition for Writ of Certiorari.

    Respectfully submitted this the __30th__ day of __April__, 2004.

                _Clark M. Parker_

            CLARK M. PARKER (PAR069)
            ATTORNEY FOR APPELLANT
            BRANTLEY & PARKER, L.L.C.
            401 NORTH FOSTER STREET
            DOTHAN, ALABAMA 36303
            (334) 793-9009

## CERTIFICATE OF SERVICE

I certify that I have this day served copies of this Motion on all parties to the appeal in the Alabama Court of Criminal Appeals, to the Court of Criminal Appeals and upon the Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36310, by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, on this the 30ᵗʰ day of April, 2004.

CLARK M. PARKER (PAR069)
ATTORNEY FOR APPELLANT
BRANTLEY & PARKER, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, ALABAMA 36303
(334) 793-9009